PETROLEUM WHOLESALE V. SHABANA ENT



NO. 07-00-0356-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL C



APRIL 2, 2002



______________________________




PETROLEUM WHOLESALE, INC., APPELLANT



V.



SHABANA ENTERPRISES, INC. AND VARSHA HUSSAIN, APPELLEES




_________________________________



FROM THE 133RD DISTRICT COURT OF HARRIS COUNTY;



NO. 97-44520; HONORABLE LAMAR MCCORKLE, JUDGE



_______________________________



Before QUINN and REAVIS and JOHNSON, JJ.

 Appellant Petroleum Wholesale, Inc. filed a notice of appeal challenging the trial
court's judgment that appellees Shabana Enterprises, Inc. and Varsha Hussain recover
$11,000 plus interest and attorney's fees. The clerk's record and reporter's record have
been filed. On May 2, 2001, the appeal was abated at the request of the parties to
continue settlement negotiations. By letter dated December 11, 2001, this Court notified
counsel that the appeal had been reinstated and that Petroleum Wholesale's brief was due
to be filed by January 11, 2002. In response, Petroleum Wholesale filed a motion for
extension of time in which to file its brief and the Court granted the motion until February
11, 2002. The brief was not filed. By letter dated March 14, 2002, this Court notified
counsel of the defect and also directed counsel to reasonably explain the failure to file a
brief together with a showing that Shabana Enterprises and Varsha Hussain have not been
significantly injured by the delay by March 25, 2002. Counsel for Shabana Enterprises
responded by forwarding copy of a letter dated March 25, 2002, to counsel for Petroleum
Wholesale indicating that Shabana Enterprises was withdrawing the settlement agreement
and proceeding with the case. Counsel for Petroleum Wholesale did not respond to this
Court's letter and the brief remains outstanding.

 Accordingly, we dismiss this appeal for want of prosecution and for failure to comply
with an order of this Court. See Tex. R. App. P. 38.8(a)(1) and 42.3(a) and (c).


 Don H. Reavis

 Justice


Do not publish.



lse" Priority="9" SemiHidden="false"
 UnhideWhenUsed="false" QFormat="true" Name="heading 1"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 









NO. 07-09-0280-CV

IN THE COURT OF
APPEALS

FOR THE SEVENTH
DISTRICT OF TEXAS

AT AMARILLO

PANEL C

MARCH 30, 2010

_____________________________

In the Interest of
L.T., L.M.R., and L.M.L., Children

_____________________________

FROM THE 223RD
DISTRICT COURT OF GRAY COUNTY;

NO. 34913; HON. PHIL
N. VANDERPOOL, PRESIDING

_____________________________

Memorandum Opinion

_____________________________

Before QUINN, C.J., and HANCOCK  and PIRTLE, JJ.

            Evelyn
Turrentine appeals from a final order terminating her parental rights to L.T.,
L.M.R., and L.M.L., her minor children. 
Sammy Laury also appeals from an order terminating his parental rights
to L.M.L.[1]  We affirm.

            Issues
Raised by Laury

            Laury filed
a statement of points he intended to raise on appeal.  It contains many topics that go unmentioned
in his appellate brief; so we address only those issues actually mentioned and
briefed per Texas Rule of Appellate Procedure 38.1.

            

            Legal and Factual Sufficiency of the
Evidence

            The first complaints
we address involve the legal and factual sufficiency of the evidence underlying
the trial courts decision to terminate the parent/child relationship.  Upon doing so, we immediately note that the
trial court found three statutory grounds warranting termination.  They involved placing or allowing the child
to remain in conditions which endangered the childs physical or emotional
well-being, engaging in conduct or placing the child with people who engaged in
conduct that endangered the child, and failing to comply with a court order
establishing prerequisites for the return of the child.  Only the first two grounds were addressed by
Laury at bar, however.  He did not attack
the sufficiency of the evidence supporting the last one.  This is problematic because the decision to
terminate need only be based on or supported by one statutory ground, so long
as termination remains in the childs best interest.  In re K.C.B., 280 S.W.3d 888, 894-95 (Tex. App.Amarillo 2009, pet.
denied).  And, since Laury failed
to challenge one of the three grounds, we need not decide whether the evidence
was sufficient to warrant termination on the grounds he did address.  

            As for
Laurys attack upon the finding that termination was in the childs best
interest, the record contains evidence that 1) he had a history of drug use, 2)
he had been unable to maintain a job, 3) he lied about jobs he had purportedly
held in the past, 4) he had not paid child support for this child, 5) he voluntarily
terminated his rights to two of his other children after being jailed for
failing to financially support them, 6) he has had unstable housing, 7) personnel
from the Department of Family and Protective Services (Department) smelled
marijuana when they visited his home, 8) he had a charge for possession of
marijuana pending against him, 9) a psychologist testified that Laury lacked a
strong sense of responsibility, lacked the ability to maintain direction and
goals, had questionable motivation to change, did not make maintaining
relationships with his children a high priority in his life, had a
lackadaisical approach to the whole issue of parenting responsibility, had a
pattern of trying not to be very clear in his thinking so he could be less
responsible, and presented a serious concern that he would be at risk to place
children in a neglectful situation in the future, 10) the child was removed at
birth and, at the time of trial, was between one and two years old, 11) the
child was adoptable, and 12) it was hoped that the child could be adopted into
a home with the other two children who were also the subject of this termination
proceeding and with whom he lived in foster care.  Considering this evidence within the
framework established in Holley v. Adams,
544 S.W.2d 367 (Tex. 1976), we conclude that clear and convincing evidence
existed to support the finding that termination was in L.M.L.s best interest.

            That other evidence
appeared of record suggesting Laury improved his lot in life and his potential
for being an acceptable father is acknowledged. 
Yet, the focus remains on the best interest of the child, not of
Laury.  And, the factfinder
need not place the child at risk simply to afford a parent one more chance to
do that which he should have done all along.  
Having determined that a statutory ground for termination existed and
that clear and convincing evidence supported the finding that termination was
in the childs best interest, we overrule Laurys
legal and factual sufficiency issues.  

            Constitutional Right to Maintain
Relationship

            Through his
final issue, Laury suggests that the United States Constitution entitles a
parent who [has] gotten on the right track to keep his child.  The particular constitutional provision
allegedly mandating same went unmentioned though, as did all other legal
authority supporting the contention. 
Thus, we cannot say that the topic was adequately briefed.  See
Ratsavong v. Menevilay, 176
S.W.3d 661, 666 (Tex. App.El Paso 2005, pet. denied) (requiring the citation
of legal authority in support of ones argument).  

            Nor do we
know of any constitutional proviso that subordinates the best interest of the
child to a parental desire to maintain the parent/child relationship merely
because the parent may be on the right track. 
So too are we unaware of any constitutional mandate requiring the trial
court to ignore the historical conduct of a parent when deciding whether to
terminate parental rights.  Indeed, authority
has recognized that the quality and character of ones past actions is often indicative
of his future demeanor.   See e.g. Williams v. Williams, 150 S.W.3d 436, 451 (Tex. App.Austin 2004,
pet. denied).  Moreover, if Laury had
gotten on the right track as suggested, one is left to wonder why he continued
to eschew one of the most basic legal obligations due a child, that obligation
being the provision of economic support. 
Tex. Fam. Code Ann. §151.001(a)(3) (Vernon 2008) (mandating that a parent financially
support his child).  This continued
default could lead a reasonable factfinder to
rationally doubt the suggestion that Laury is actually on the right track. 

            In sum, possibly
being on the right track does not mean that Laury arrived at the requisite
destination, and under the circumstances before us, the Constitution requires
neither the trial court nor this court to so infer.  The issue is overruled.     

            

 

Issues Raised by Turrentine

            Turrentine also questions the
legal and factual sufficiency of the evidence supporting the trial courts
decision.  She further labels as
unconstitutional the statutory provision obligating her to tender potential
issues for appeal within 15 days of the execution of the trial courts final
judgment.  Various of the trial courts
decisions regarding the admission of evidence were also erroneous, in her
view.   We, however, find no substance in
any of her contentions.

            Legal and Factual Sufficiency

            Like Laury,
Turrentine attacked less than all of the statutory findings upon which termination
was based.  Indeed, she failed to address
the same one that Laury failed to discuss, i.e.
the failure to comply with obligations contained in a court order.  Consequently, we overrule her contention that
the evidence was legally and factually insufficient to prove the existence of
one or more statutory conditions to termination.  

            As for the
allegation encompassing the childs best interest, we find the following
evidence of record.   Turrentine 1) had a
long history of using cocaine and marijuana, 2) used drugs while pregnant with
L.M.L., which resulted in the child testing positive for drugs at birth, 3) did
not feel she needed help to stop using drugs, 4) continued to use drugs during
the pendency of the case even after completing an in-patient drug treatment
program, 5) did not complete her counseling sessions, 6) had an unstable work
history, 7) lacked stable housing during the pendency of the case, 8) failed to
notify the Department when she moved, 9) sporadically visited her children, 10)
had her visitation suspended at one time due to her drug use, 11) told her
children she would not see them again prior to the final hearing which comment seriously
upset one of the children, 12) had several of her children express fear about
returning to live with her, 13) had been incarcerated for forgery, and 14) had
failed to pay all her child support. 
Other evidence illustrated that all three children are adoptable and her
older children believed she has lied to them. 
Furthermore, the psychologist who examined Turrentine opined that she
did not show a strong sensitivity to her childrens needs, exercised erratic
judgment, had a pattern of weak and questionable judgment in her care of the
children, had a pattern of placing the children in risky . . . situations,
around risky persons, and illustrated little motivation for change.  Turrentine also admitted
to returning to drugs at one point because she thought the case was over.  In toto,
the foregoing is clear and convincing evidence upon which a trial court could conclude
that termination of the parental relationship was in the best interest of the
children. 

            That
Turrentine recently secured employment, found an apartment, and bought gifts
for the children also appeared in the record. 
Nonetheless, the latter evidence does not overwhelm that described above
or otherwise impugn the trial courts finding. 
The issue is overruled.

            Constitutionality of the Filing Period

Turrentine next argues that §263.405(b)(2)
of the Family Code is unconstitutional. 
That section requires one appealing from a termination order to file a
statement of points upon which he intends to appeal.  Tex.
Fam. Code Ann. §263.405(b)(2) (Vernon 2008).   Furthermore, that statement must be filed
within 15 days of the date the final order was signed.  Id. §263.405(b).  Because
of the rather short time limit involved, Turrentine believed that it prevented
her from receiving the effective assistance of trial counsel and, therefore,
due process.  We disagree and overrule
the issue.

Before it can be said that one has
been denied the effective assistance of counsel, the claimant must prove that
counsels performance was both unreasonably deficient and harmful.  In re J.P.B., 180 S.W.3d 579, 574 (Tex. 2005).  And, before it can be said that the time
period in question somehow prevented counsel from being effective, it would be
logical for Turrentine to prove that her counsel was
prevented from doing something.  Indeed,
one cannot legitimately claim foul in being denied the time to do something if
he never thought about or intended to do it. 
And, what, if anything, Turrentine or her counsel would have done at bar
but for the 15-day time period went unmentioned.  Rather, the number of topics included in her
statement of points (i.e. 13)
indicates that the provision stood as no impediment to her ability to attack
the final judgment.   So, we cannot say
that she proved that she was denied effective counsel and, therefore, due
process because of §263.405(b) of the Family Code.                 

Admission
of Hearsay

Turrentine finally contends that
the trial court erred in allowing the admission of evidence regarding drug tests
she and L.M.L. underwent and the results of same.  The specific evidence was contained in
records maintained by the Department but which allegedly failed to qualify as
business records.  Thus, the statements
therein about drug use and drug testing purportedly were hearsay and their
consideration allegedly denied her due process. 
We overrule the issue.

Assuming arguendo that the reports were inadmissible hearsay, we nonetheless
find their admission to be harmless. 
This is so because like evidence was admitted elsewhere without
objection.  See In re E.A.K., 192 S.W.3d 133, 148 (Tex. App.
Houston [14th Dist.] 2006, pet. denied) (holding that error in the
admission of evidence is harmless when like evidence comes in elsewhere without
objection).  For instance, one expert
testified that Turrentine admitted to him that between 2002 and 2007 she smoked
marijuana daily and ingested cocaine twice a week, except for the time she was
in prison.  That five-year time span encompassed
the months during which she was pregnant with L.M.L., who was born in April of
2007.  She also admitted to this expert
that she was seeing him because she failed various drug tests administered to
her.  Turrentine further admitted to the
witness that she did not stop taking drugs until September of 2007, or some
five months after L.M.L. was born.  The
witness also testified, without objection, to being told either by Turrentine
or a caseworker that L.M.L. had tested positive for drugs at his birth.  So, as can be seen, the evidence about which
Turrentine now complains was actually redundant of other evidence about which
she uttered no complaint below or here.

Having overruled each issue, we
affirm the judgment of the trial court.

 

 

                                                                                    Brian
Quinn

                                                                                    Chief
Justice

 











[1]The fathers of L.T. and L.M.R.
did not appeal from the termination of their parental rights.